## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

LARRY P. LOWELL, JR., NANCY JANE
LOWELL, LAURA TERRELL SASSER,
MARC ANTHONY SASSER, PATRICIA K.
WATTS, CLAUDE N. LEDGERWOOD, III,
BONITA LEDGERWOOD, ERIC JIMINEZ,
and JENNIFER DEAL, on behalf of
themselves and all others similarly situated,

     Plaintiffs,

v.

SUMMER BAY MANAGEMENT, L.C.,
SUMMER BAY PARTNERSHIP, PAUL
CALDWELL, GARY WAITS, JERRY
KAUTZ, JIM CRAFTON, TOM ACKERLY,
ROBERT GREENE, DONALD
MIDDENDORF, MARCEL FERRERE,
RONALD HARPOLE, JOHN KEITH,
STEVEN NAFZIGER, STEPHANIE EVANS,
GATLINBURG TOWN SQUARE
MEMBER'S ASSOCIATION, INC.,
GATLINBURG TOWN SQUARE RESORT
CONDOMINIUM II MEMBERS'
ASSOCIATION, INC., and MOUNTAIN
MEADOWS TIME-SHARE OWNERS
ASSOCIATION, INC.

     Defendants.

**CLASS ACTION
COMPLAINT**

**NO: 3:14-cv-00296**

**JURY DEMANDED**

## CLASS ACTION COMPLAINT

**NOW INTO COURT** come the Plaintiffs, Larry P. Lowell, Jr., and Nancy Jane Lowell, ("GTS Plaintiffs"), on behalf of themselves and all others similarly situated, Laura Terrell Sasser, Marc Anthony Sasser, and Patricia K. Watts ("GTSII Plaintiffs"), on behalf of themselves and all others similarly situated, and Claude N. Ledgerwood, III, Bonita Ledgerwood, Eric Jimenez, and Jennifer Deal ("MM Plaintiffs"), on behalf of themselves and all others similarly situated (collectively "Class Plaintiffs" representing each respective putative "Class"), by and through the undersigned counsel, and bring this action for breach of fiduciary duty, conspiracy to commit breach of fiduciary duty, aiding and abetting, and declaratory judgment. Class Plaintiffs seek class certification, an order setting aside a settlement reached in a prior lawsuit that was the result of the Defendants' illegal conduct, a declaratory judgment as to the effect of the settlement, and compensatory and punitive damages and attorney's fees, expenses, and costs from Defendants.

## Nature of Action

1.      Class Plaintiffs are members of Gatlinburg Town Square Member's Association, Inc. ("GTSMA"), Gatlinburg Town Square Resort Condominium II Members' Association, Inc. ("GTSMAII") and/or Mountain Meadows Time-Share Owners Association, Inc. ("MMA"). GTSMA, GTSMAII and MMA may be collectively referred to herein as the "Associations."

2.      Defendants Gary Waits, Jerry Kautz, Jim Crafton, Tom Ackerly, Robert Greene, Donald Middendorf, Marcel Ferrere, Ronald Harpole, John Keith, Steven Nafziger, and Stephanie Evans (collectively, the "Board Member Defendants") are or were members of the Board of Directors of the Associations and thereby owed a fiduciary duty to Class Plaintiffs and the putative Classes pursuant to *T.C.A. § 48-58-301*, *et seq.*

2

3.      As alleged herein, Defendants Summer Bay Management, L.C. ("SBM"),

Summer Bay Partnership ("SBP") and Paul Caldwell ("Caldwell") conspired with the Board

Member Defendants to breach the fiduciary duty owed to Class Plaintiffs and the putative

Classes in approving and purportedly settling a state court action styled *Summer Bay*

*Management, L.C., et al. v. Gatlinburg Town Square Member's Associations, Inc.*, Chancery

Court for Sevier County, Tennessee, Docket No. 12-1-005 (the "State Court Action")[1] - a

settlement: (a) which was not in the best interests of the Class Plaintiffs and putative Classes; (b)

which SBM and SBP allege releases the claims of the Class Plaintiffs and the members of three

(3) certified Classes in the pending lawsuit in the United States District Court for the Eastern

District of Tennessee, *Lowell et al. v. Summer Bay Management, L.C. et al.*, No: 3:13-cv-00229

(the "Related Action"); and (c) which on its face is null and void.

4.      The Board Member Defendants negotiated and approved the Settlement in bad

faith and in violation of their fiduciary duties to the Class Plaintiffs and putative Classes.   In

particular, the Board Member Defendants breached their duty of loyalty to the Associations,

which required that they each faithfully pursue the Associations' interests and those of its

members, rather than the interests of SBM and SBP.

### Parties

5.      GTS Plaintiffs Larry P. Lowell, Jr. and Nancy Jane Lowell are husband and wife

and citizens and residents of the State of Tennessee, residing in Knoxville, Tennessee. The

Lowells, since June 20, 2008, have owned, and still own, a one-week vacation timeshare interval

in the timeshare development known as the Gatlinburg Town Square ("GTS") and by virtue of

---

[1] A copy of the settlement agreement in the State Court Action is attached hereto and incorporated as ***Exhibit 1***, hereinafter referred to as the "Settlement Agreement."  The resolution of the State Court Action is referred to herein as the "Settlement."

such ownership are members of the GTSMA. The Lowells are Class Representatives of the certified GTS Class in the Related Action.

6.        GTSII Plaintiffs Marc Anthony Sasser and Laura Terrell Sasser are husband and wife and citizens and residents of the State of Tennessee, residing in Knoxville, Tennessee. The Sassers, since June 18, 2005, have owned, and still own, a one-week vacation timeshare interval in the timeshare development known as the Gatlinburg Town Square Resort Condominium II ("GTSII") and by virtue of such ownership are members of the GTSMAII. The Sassers are Class Representatives of the certified GTSII Class in the Related Action.  Patricia Watts is a citizen and resident of the State of Louisiana, residing in Baton Rouge, Louisiana. Ms. Watts, since May 5, 2008, has owned, and still owns, a one-week vacation timeshare interval in the GTSII and by virtue of such ownership is a member of the GTSMAII. Ms. Watts is a Class Representative of the certified GTSII Class in the Related Action.

7.        MM Plaintiffs Claude N. Ledgerwood, III and Bonita Ledgerwood are husband and wife and citizens and residents of the State of Tennessee, residing in Powell, Tennessee. The Ledgerwoods, since April 12, 1997, have owned, and still own, a one-week vacation timeshare interval in the timeshare development known as the Mountain Meadows Resort Condominiums ("MM") and by virtue of such ownership are members of the MMA.  The Ledgerwoods are Class Representatives of the certified MM Class in the Related Action.    Eric Jimenez and Jennifer Deal are citizens and residents of the State of Ohio, residing in Troy, Ohio.  Mr. Jimenez and Ms. Deal, since December 1, 2005, have owned, and still own, a one-week vacation timeshare interval in the MM and by virtue of such ownership are members of the MMA. Mr. Jiminez and Ms. Deal are Class Representatives of the certified MM Class in the Related Action.

8.     The Board Member Defendants, at all times material, are or were officers and directors of GTSMA, GTSMAII, and/or MMA and were charged with negotiating and approving the Settlement.

9.     At all times material, Gary Waits was President and Director of GTSMA.  He resides at 6561 Clearfield Court, Loveland, OH 45140, where he may be served with process.

10.     At all times material, Robert Greene was a Director of GTSMA and Vice/President and Director of GTSMAII.  He resides at 228 Norfolk Drive, Knoxville, TN 37922, where he may be served with process.

11.     At all times material, Jim Crafton was Secretary/Treasurer and Director of GTSMA.  He resides at 898 Indian Hill Road, Hendersonville, NC 28791, where he may be served with process.

12.     At all times material, Jerry Kautz was Vice President and Director of GTSMA. He resides at 19102 White Wing Place, Tampa, FL 33647, where he may be served with process.

13.     At all times material, Tom Ackerly was a Director of GTSMA.  He resides at 445 Carson Road, Crossville, TN 38571, where he may be served with process.

14.     At all times material, Donald Middendorf was President and Director of GTSMAII.  He resides at 1500 E. Highway 72, Fredericktown, MO 63645, where he may be served with process.

15.     At all times material, Marcel Ferrere was Secretary/Treasurer and Director of GTSMAII, as well as President and Director of MMA.  He resides at 75 Macrae Drive, Grove City, PA 16127-4427, where he may be served with process.

16.     At all times material, Ron Harpole was a Director of GTSMAII.  He resides at 972 County Line Road, Mendenhall, MS 39114, where he may be served with process.

17.     At all times material, John Keith was a Director of GTSMAII.  His address is P.O. Box 50491, Nashville, TN 37205, where he may be served with process via certified mail.

18.     At all times material, Steven Nafziger was Vice President and Director of MMA. He resides at 6503 County Road 19, Wauseon, OH 43567, where he may be served with process.

19.     At all times material, Stephanie Evans was Secretary/Treasurer and Director of MMA.  She resides at 106 Reaves Hill Drive, Greenville, TN 37743, where she may be served with process.

20.     SBM is a Florida Limited Liability Company with an office located at 414 Historic Nature Trail, Gatlinburg, Tennessee 37738. At all times material, SBM was the "managing agent" of GTS, GTSII, and MM.  SBM may be served with process through its registered agent for service of process, R. Alexander Johnson, 150 Court Avenue, Sevierville, TN 37862-3576.

21.     SBP is a Florida General Partnership with its principal address located at 25 Town Center Boulevard, Suite C, Clermont, Florida 34714. SBP is an affiliate of SBM.  At all times material, SBP was the "developer" of  GTS, GTSII, and MM by virtue of owning GTS, GTSII, and MM and being the successor-in-interest to the unsold timeshare inventory of GTS, GTSII, and MM. SBP may be served with process at its principal address located at 25 Town Center Boulevard, Suite C, Clermont, Florida 34714.

22.     At all times material, Caldwell was General Manager of Summer Bay Management, L.C.  He lives in the State of Florida.  He may be served at 17805 U.S. 192, Clermont, FL 34714.  SBM, SBP, and Caldwell may be referred to collectively herein as "Summer Bay."

6

23.     Defendant GTSMA is a Tennessee not-for-profit corporation with its principal place of business in Gatlinburg, Sevier County, Tennessee. At all times material, the GTSMA, acting through its board of directors, was responsible for the operation of the GTS.  Its directors owed fiduciary duties to the members of GTSMA, specifically including the GTS Plaintiffs and the putative GTS Class. Aside from the illegal actions of the Board Member Defendants as alleged herein, at this time, Class Plaintiffs do not allege that GTSMA is guilty of wrong-doing but reserve the right to amend their complaint if discovery reveals illegal actions by GTSMA. GTSMA is added as a party to this action pursuant to Fed. R. Civ. P. 19(a) in order to ensure that the Court is able to accord complete relief among the parties as requested herein.  GTSMA may be served upon its registered agent, R. Alexander Johnson, 150 Court Avenue, Sevierville, Tennessee 37862-3576.

24.     Defendant GTSMAII is a Tennessee not-for-profit corporation with its principal place of business in Gatlinburg, Sevier County, Tennessee. At all times material, the GTSMAII, acting through its board of directors, was responsible for the operation of the GTSII.  Its directors owed fiduciary duties to the GTSMAII members, specifically including the GTSII Plaintiffs and the putative GTSII Class.  Aside from the illegal actions of the Board Member Defendants as alleged herein, at this time, Class Plaintiffs do not allege that GTSMAII is guilty of wrong-doing but reserve the right to amend their complaint if discovery reveals illegal actions by GTSMAII. GTSMAII is added as a party to this action pursuant to Fed. R. Civ. P. 19(a) in order to ensure that the Court is able to accord complete relief among the parties as requested herein.  GTSMAII may be served upon its registered agent, R. Alexander Johnson, 150 Court Avenue, Sevierville, Tennessee 37862-3576.

25.     Defendant MMA is a Tennessee not-for-profit corporation with its principal place of business in Pigeon Forge, Sevier County, Tennessee. At all times material, the MMA, acting through its board of directors, was responsible for the operation of the MM.  The directors owed fiduciary duties to the MMA members, specifically including the MM Plaintiffs and the putative MM Class.  Aside from the illegal actions of the Board Member Defendants as alleged herein, at this time, Class Plaintiffs do not allege that MMA is guilty of wrong-doing but reserve the right to amend their complaint if discovery reveals illegal actions by MMA.  MMA is added as a party to this action pursuant to Fed. R. Civ. P. 19(a) in order to ensure that the Court is able to accord complete relief among the parties as requested herein.  MMA may be served upon its registered agent, R. Alexander Johnson, 150 Court Avenue, Sevierville, Tennessee 37862-3576.

## Jurisdiction and Venue

26.     The Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000.000), exclusive of interest and costs.

27.     The Court also has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court and Defendants' tortious conduct occurred in Tennessee.

28.     Venue is proper with this Court pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Substantive Allegations

29.     In or about December 2011, the Boards of Directors for the Associations attempted to terminate the Associations' then-existing management agreements with SBM and

replace SBM with another management company, Liberte Management Group of the Pinellas Islands, Inc. ("Liberte"). The Boards of Directors went so far as to enter into new management agreement(s) with Liberte.

30. In connection with the Associations' attempt to terminate their then-existing management agreements with SBM, the Associations discovered that, in violation of the *Tennessee Time-Share Act*, *Tenn. Code Ann. § 66-32-101*, *et seq.* (the "Act") and in breach of the then-existing management agreements, from February 8, 2002 through December of 2011, SBM was neither a "licensed real estate firm [n]or bonded agent" as required to act as the managing agent of GTS, GTSII, and MM. During this nearly ten (10) year period of time, SBM unlawfully collected millions of dollars in management fees, data processing fees, and commissions from the Class Plaintiffs and putative Classes.

31. SBM and SBP contended that the Associations did not have the right to terminate the then-existing management agreements and filed suit against the Associations and Liberte in the State Court Action.

32. Upon the Associations' discovery of SBM's unlawful actions, Summer Bay devised and set upon an unlawful course of conduct to replace the members of the Associations' respective Boards of Directors with individuals they knew they could influence and who would vote to resolve the State Court Action in a manner beneficial to SBM and SBP and detrimental to the Associations, Class Plaintiffs, and the putative Classes. Because of the many time-share units SBP owned, for all intents and purposes, Summer Bay knew SBP could control any vote of the Associations for election of board members and could secure the election of replacement directors who were favorable to SBM and SBP.

9

33.     In furtherance of their scheme, Summer Bay threatened to add, as party defendants in the State Court Action, the individual board members of the Associations who had voted to terminate the then-existing management agreements unless they agreed to resign from their respective board(s).

34.      When this tact achieved limited success, Summer Bay followed through with their threats and added the individual board members as party defendants in the State Court Action. Immediately thereafter, SBM and SBP offered to dismiss each board member if that board member would resign. This tact proved more successful with all but a few of members of the respective boards agreeing to resign in exchange for dismissal from the State Court Action.

35.     As part of the scheme, Caldwell personally vetted each replacement director prior to any vote.  Caldwell's vetting process was done in private and not disclosed to the other members of the Associations.

36.     Specifically, Caldwell had a private phone conversation with Defendant Gary Waits on August 2, 2012, and again on September 12, 2012, regarding the State County Action.

37.     Paul Caldwell also spoke to Defendants Donald Middendorf and Marcel Ferrere prior to their election in February 2012.

38.     Upon information and belief, Caldwell directly or indirectly communicated with the other replacement directors before their election.

39.     Details of the conversations were not disclosed to the other members of the Associations prior to the vote.  Upon information and belief, the purpose of the conversations was to ensure that the replacement director would go along with resolving the State Court Action in a manner favorable to SBM and SBP – which necessarily would be unfavorable to the Associations, the Class Plaintiffs, and the putative Classes.

10

40.     The conversations with the directors prior to their election formed a civil conspiracy between SBM, SBP, Paul Caldwell, Gary Waits, Donald Middendorf and Marcel Ferrere (the "Conspiracy Defendants") to achieve a settlement of the State Court Action which was most favorable to SBM and SBP and which was not in the best interests of the Associations, the Class Plaintiffs, and the putative Classes.

41.     As a result, there was a unity of purpose and/or a common design and understanding, or a meeting of minds by and among the Conspiracy Defendants to settle the State Court Action favorably to SBM and SBP, on whatever material terms Summer Bay demanded.

42.     Not coincidentally, several of the replacement directors  (Defendants Donald Middendorf and Marcel Ferrere) had long standing personal and business relationships with Caldwell, SBM, SBP, and/or Joe H. Scott, Jr. (directly or indirectly the owner of SBM and/or SBP).

43.     Further, on information and belief, several of the replacement directors were given, and did not pay for, their ownership interest in their respective timeshare development(s).

44.     As part of the conspiracy, Defendants Gary Waits, Doanlad Middendorf, and Marcel Ferrere, together with Robert Greene, secured membership on the "Negotiation Committee" of the Boards for GTSMA, GTSMAII, and MMA.  This "Negotiation Committee" was tasked with "negotiating" the resolution of the State Court Action. Aside from Defendant Robert Greene, this committee was completely comprised of replacement directors friendly to Summer Bay.

45.     In violation of their fiduciary duties to the Class Plaintiffs and the putative Classes, using the authority of and under the guise of the "Negotiation Committee," Defendants

Gary Waits, Donald Middendorf, and Marcel Ferrere then "negotiated" a resolution of the State Court Action which they knew was not favorable to the Associations, the Class Plaintiffs, and the putative Classes and, in doing so, never even considered the claims of the Class Plaintiffs and the putative Classes for the millions of dollars in management fees, data processing fees, and commissions unlawfully collected by SBM.

46.     At the time of the Settlement, with the lone exception of Defendants Robert Greene and Stephanie Evans, whom Summer Bay approved and/or had been unable to force his/her resignation,[2] SBP had replaced all of the directors of the Associations with its hand-picked puppets, each of whom Summer Bay had ensured would cause the State Court Action to be resolved favorably to Summer Bay.

47.     The Settlement reached by the Negotiation Committee was entirely one-sided to the benefit of Summer Bay.  Incredibly,  the Associations agreed to: (a) pay SBM $100,000.00; (b) assign their lien rights in the timeshare unit weeks to SBP, pay the cost of same, and then waive SBP's obligation to pay assessments on those weeks until the assessments due for the year 2016;[3]  (3) keep the Settlement confidential from "any person or entity" (including the Class Plaintiffs and the putative Classes) unless specifically requested by a "member of the Association";[4] and (4)  enter into new management agreements which are extremely lucrative and valuable to Summer Bay.  Further, as contended by SBM and SBP in the Related Action (but disputed by Class Plaintiffs and certified Classes in the Related Action), the Associations purportedly released their members' claims for the millions of dollars in management fees, data

---

[2] Recently, at the expiration of his term(s), Summer Bay was able to replace Defendant Robert Greene as member of the Board(s).

[3] This part of the Settlement was extremely valuable to Summer Bay as it further consolidated control and ownership in SBP as part of Summer Bay's plan to convert the developments from time share to vacation club and re-brand under the name Exploria. Whether this plan and/or its execution is lawful is left for another day.

[4] Under the Settlement Agreement, confidentiality is one-sided and does not apply to SBM or SBP.  Curiously, as part of the Settlement, if a member does request to view to the Settlement Agreement, his/her name "shall be kept in the records for …[the] Association."

processing fees, and commissions unlawfully collected by SBM. The Associations received nothing for its counter-claims and nothing on behalf of their members for the millions of dollars in management fees, data processing fees, and commissions unlawfully collected by SBM.

48.     The "Negotiation Committee" never raised the issue of management fees, data processing fees, and/or commissions unlawfully collected by SBM and never agreed to releasing any of their members' claims relative to monies paid by their members to SBM as management fees, data processing fees, and/or commissions. Any language purportedly releasing these claims was merely language inserted and demanded by Summer Bay and rubber-stamped by the Associations and "Negotiation Committee" - all as part of the conspiracy.

49.     Neither the "Negotiation Committee" nor any other Board Member Defendant ever raised or discussed the possibility of pursuing claims against SBM and/or SBP relative to monies paid by their members to SBM as management fees, data processing fees, and/or commissions. Such a claim, if raised and pursued, was worth millions of dollars.

50.     Alternatively, if the "Negotiation Committee" and any other Board Member Defendant did not actually know that the Settlement was not in the Associations', Class Plaintiffs', and putative Classes' best interests, the Board Member Defendants violated their fiduciary duties by failing to act in good faith and/or with the care an ordinarily prudent person in a like position would exercise under similar circumstances and/or in a manner they reasonably believed was in the best interests of the Associations, Class Plaintiffs, and putative Classes.

51.     The conduct of the Board Member Defendants in negotiating and approving the Settlement of the State Court Action, as alleged in the preceding paragraphs, was willful, wanton and/or grossly negligent entitling the Class Plaintiffs and putative Classes to exemplary damages.

13

52.     After the "Negotiation Committee" completed "negotiations," they, together with the remaining Board Member Defendants, approved the Settlement.   SBM and SBP signed and executed the Settlement Agreement on June 28, 2013.  Under its express terms, the Settlement Agreement was "null and void and of no force and effect whatsoever" unless delivery of one executed counterpart of the Settlement Agreement from each party to the other occurred on or before 5:00 pm on June 28, 2013. On its face, the Settlement Agreement reflects the respective Associations did not execute the Settlement Agreement until June 29, 2013.  As such, by its express terms, the Settlement Agreement in null and void and of no force or effect.

53.     From their conversations with Caldwell,[5] the Board Member Defendants were aware that Summer Bay had stacked the respective Boards with persons who were friendly with Summer Bay and who were not looking out for the best interests of the Associations and their members.  Accordingly, none of the Board Member Defendants were entitled to rely upon the recommendation of the "Negotiation Committee."

54.     In addition, under the Settlement Agreement, Defendant Robert Greene was released as a defendant in the State Court Action in consideration for concessions made by the Board Member Defendants, and the Board Member Defendants knew about this obvious conflict of interest.

55.     Class Plaintiffs moved to intervene in the State Court Action on or about December 21, 2012 to protect the Associations' members' interests and pursue their claims for the millions of dollars in management fees, data processing fees, and commissions unlawfully collected by SBM. A hearing on Class Plaintiffs' Motions was not held until March 3, 2013.

---

[5] It is not necessary for the Directors to have communicated with each other.  Under the "hub and spoke" theory, a conspiracy was formed among all Defendants through Caldwell acting as the hub and the Board Member Defendants as the spokes.  Further, conspiracies are, by nature, secretive, and Class Plaintiffs cannot be expected to know the precise circumstances of the conspiracy before having had a chance to conduct discovery.

14

56.     As part of the conspiracy, Defendants opposed Class Plaintiffs' intervention and, in doing so, represented to the State Court that the Associations' claims were being prosecuted and the members' rights were being protected.   However, to the contrary, as of December 19, 2012, the parties in the State Court Action had agreed to the basic settlement terms, which excluded any consideration or reference to the claims of the Associations and/or their members relative to the millions of dollars in management fees, data processing fees, and commissions unlawfully collected by SBM.  This was not disclosed to the State Court and/or the Class Plaintiffs.

57.     Further, by February 13, 2013, SBM and SBP's counsel had emailed a draft settlement agreement to the lawyer representing the Associations.  At that time, it would have been clear that the Associations' members' claims for millions of dollars in management fees, data processing fees, and commissions unlawfully collected by SBM were not being pursued by the Associations and the interests of their members were being ignored, abandoned, and discarded.  Again, this was not disclosed to the State Court and/or the Class Plaintiffs.

58.     At the March 3, 2013 hearing on Class Plaintiffs' Motions to Intervene in the State Court Action, in furtherance of the conspiracy, Defendants specifically represented to the State Court Judge that such claims were being prosecuted when, in fact, Associations' members' claims for millions of dollars in management fees, data processing fees, and commissions unlawfully collected by SBM were not being pursued.

59.     After Class Plaintiffs' Motions to Intervene in the State Court Action were denied, but before the Settlement was finalized, Class Plaintiffs filed the Related Action.

60.     This Court has certified three (3) classes in the Related Action.

61.     Following certification of the three (3) classes in the Related Action, SBP and

SBM, in furtherance of the conspiracy, moved to dismiss, asserting that the Settlement in the

State Court Action barred prosecution of that case under the doctrine of *res judicata*.  In

response, Class Plaintiffs averred, *inter alia,* that the settlement was the product of collusion and

*res judicata* did not apply.

62.     The issues of the Related Action and this matter have direct bearing on each

other, and Class Plaintiffs aver that the cases are related pursuant to *E.D. Tenn. L.R. 3.2(d)(3)*

and that the cases should be consolidated.

## Class Allegations

63.     The GTS Plaintiffs bring this action on behalf of themselves and all other

similarly situated persons as members of a Class defined as follows:

> All persons who owned one or more one-week vacation timeshare
> interval(s) in the timeshare development known as Gatlinburg
> Town Square at any point between March 2008 and June 29, 2013.
>
> Excluded from the Class are the Board Member Defendants and
> their immediate families, any entity in which any Defendant has or
> had a controlling interest, any entity which has or had a controlling
> interest in any Defendant, the legal representatives, heirs,
> successors, and assigns of any Defendant, jurors, any judge
> assigned to this action, and any member of the judge's immediate
> family.

64.     The GTSII Plaintiffs bring this action on behalf of themselves and all other

similarly situated persons as members of a Class defined as follows:

> All persons who owned one or more one-week vacation timeshare
> interval(s) in the timeshare development known as Gatlinburg
> Town Square Resort Condominium II at any point between June 8,
> 2009 and June 29, 2013.
>
> Excluded from the Class are the Board Member Defendants and
> their immediate families, any entity in which any Defendant has or

16

had a controlling interest, any entity which has or had a controlling interest in any Defendant, the legal representatives, heirs, successors, and assigns of any Defendant, jurors, any judge assigned to this action, and any member of the judge's immediate family.

65.     The MM Plaintiffs bring this action on behalf of themselves and all other similarly situated persons as members of a Class defined as follows:

All persons who owned one or more one-week vacation timeshare interval(s) in the timeshare development known as Mountain Meadow Resort Condominiums at any point between July 1, 2008 and June 29, 2013.

Excluded from the Class are the Board Member Defendants and their immediate families, any entity in which any Defendant has or had a controlling interest, any entity which has or had a controlling interest in any Defendant, the legal representatives, heirs, successors, and assigns of any Defendant, jurors, any judge assigned to this action, and any member of the judge's immediate family.

66.     As to each Class, this action has been brought and may be properly maintained pursuant to the provisions of *Fed. R. Civ. P. 23*.

67.     *Numerosity* (*Fed. R. Civ. P. 23(a)(1)*):  Members of each Class are so numerous and widely dispersed that joinder of them in one action is impracticable. While the precise number of members in each Class is unknown at this time to the Class Plaintiffs, each Class is believed to number in the hundreds and/or thousands. The identity of each and every member of each Class is readily ascertainable from billing information and records in SBM's and/or SBP's possession, custody or control.

68.     *Common and Predominant Questions of Law and Fact* (*Fed. R. Civ. P. 23(a)(2) and 23(b)(3)*): Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting only individual members of each Class. With respect to

17

each Class, these common and predominate legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendants conspired to enter into a settlement agreement purporting to resolve the State Court Action that was most favorable to SBM and SBP and unfavorable to the Associations and their members;

    b.  Whether SBM, SBP, and Caldwell sought to remove board members and replace them with persons who were friendly to SBM and SBP and who were not looking out for the best interests of the Associations and their members;

    c.  Whether the purported settlement of the State Court Action was in the best interests of the Associations and their members;

    d.  Whether the members of the "Negotiation Committee" violated their fiduciary duties to the Class Members in negotiating and recommending the Settlement of the State Court Action;

    e.  Whether the Board Member Defendants violated their fiduciary duties to the Class Members in approving the Settlement of the State Court Action;

    f.  Whether the Settlement Agreement in the State Court Action should be set aside; and

    g.  Whether Class Plaintiffs and the members of the Putative Classes were damaged, and the appropriate amount of damages they should be awarded.

69.    *Typicality* (*Fed. R. Civ. P. 23(a)(3)*): Each Class Plaintiff's claims are typical of the claims of the members of their Class in that each Class Plaintiff and all members of their Class are similarly affected by Defendants' wrongful conduct, their claims arise out of the same common course of conduct giving rise to the claims of the other members of their Class, and their interests are coincident with, and not antagonistic to, those of the other members of their Class.

70.    *Adequacy* (Fed. R. Civ. P. 23(a)(4)): Class Plaintiffs will fairly and adequately protect the interests of their Class and have no interests that are adverse or antagonistic to those

of their Class. Class Plaintiffs have retained counsel competent and experienced in class action litigation, and Class Plaintiffs intend to prosecute this action vigorously.

71.     This action meets the requisites for a class action under Fed. R. Civ. P. 23(b):

a.     Prosecuting separate actions by or against individual Class members would create a risk of (1) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants, and (2) adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of other members or would substantially impair or impede their ability to protect their interests;

b.     Defendants acted or refused to act on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole; and/or

c.     The prosecution of this matter as a class action is superior to all other available means for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3).  The economic harm suffered by each individual member of each Class may be limited. Given the number of the individual members of each Class, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for members of each Class to seek redress individually for the wrongs done to them. The likelihood of individual members of each Class prosecuting separate claims is exceedingly remote, and, even if members of each Class could afford individual litigation, given the size of each Class, the court system could not. Individual litigation of the legal and factual issues of this case would delay and increase expense to all parties and the court system. By contrast, a class action will present far fewer management difficulties, promote an orderly and expeditious administration and adjudication of the class claims, foster economies of scale, ensure uniformity of decisions, and provide comprehensive supervision by a single court.

### Causes of Action

### Count I - Breach of Fiduciary Duty

72.     The allegations of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

73.     By virtue of their positions as directors of one or more of the Associations, the Board Member Defendants and/or members of the "Negotiation Committee" owed Class

19

Plaintiffs and the members of the putative Classes a fiduciary duty to act in the best interests of the Associations and their members.

74.     As members of the "Negotiation Committee,"  Defendants Gary Waits, Donald Middendorf, Marcel Ferrere and Robert Greene violated their fiduciary duties under Tennessee law, including without limitation *T.C.A. §48-58-301*, to the Class Plaintiffs and the members of the putative Classes in negotiating and recommending the Settlement of the State Court Action.

75.     The Board Member Defendants violated their fiduciary duties under Tennessee law, including without limitation *T.C.A. §48-58-301*, to act in the best interests of Associations and their members by approving the Settlement.

76.     The actions of the Board Member Defendants and/or members of the "Negotiation Committee" alleged herein were intentional, fraudulent and/or malicious.

77.     Class Plaintiffs and members of the putative Classes were damaged financially by the Settlement.

78.     If the Settlement in the State Court Action bars the Related Action under *res judicata,* Class Plaintiffs and members of the putative Classes will lose a cause of action worth millions of dollars.

79.     Accordingly, Class Plaintiffs and the Class members are entitled to a judgment for their actual damages, as well as punitive damages.

80.     In addition and/or alternatively, the Settlement Agreement should be declared null and void and should be set aside in its entirety.

20

## Count II - Civil Conspiracy

81.     The allegations of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

82.     Defendants conspired and acted in concert or pursuant to a common design to settle the State Court Action on one-sided terms beneficial to SBM and SBP and detrimental to the Associations and their members.  In doing so, Defendants conspired and acted in concert or pursuant to a common design to impermissibly and unlawfully cause the Board Member Defendants and/or "Negotiation Committee" to breach their fiduciary duties to the Associations and their members, i.e. Class Plaintiffs and the members of the Putative Classes.

83.     The actions were in furtherance of Defendants' conspiracy to obtain a settlement which unfairly benefitted SBM and SBP to the detriment of the Associations and their members – who comprise the Classes for which Class Plaintiffs seek certification.

84.     In furtherance of the conspiracy, Summer Bay forced the resignations of the members of the respective Boards and replaced them with persons they knew would be friendly to SBM and SBP and not adhere to their fiduciary duties to the Associations and their members.

85.     Defendants' actions alleged herein were intentional, fraudulent and/or malicious.

86.     Class Plaintiffs and the members of the putative Classes were damaged financially by the unfair Settlement which resulted from the conspiracy.

87.     If the Settlement in the State Court Action bars the Related Action under *res judicata,* Class Plaintiffs and members of the putative Classes will lose a cause of action worth millions of dollars.

88.     Accordingly, Class Plaintiffs and the Class members are entitled to a judgment for their actual damages, as well as punitive damages.

89.     In addition and/or alternatively, because the Settlement of the State Court Action was procured by a civil conspiracy, the Settlement Agreement should be declared null and void and should be set aside in its entirety.

## Count III – Aiding and Abetting

90.     The allegations of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

91.     The Defendants aided and abetted each other in impermissibly and unlawfully causing the Board Member Defendants and/or "Negotiation Committee" to breach their fiduciary duties to the Associations and their members, i.e. Class Plaintiffs and the members of the putative Classes, by entering into the Settlement which unfairly benefited SBM and SBP to the detriment of the Associations and their members – who comprise the Classes for which Class Plaintiffs seek certification.

92.     Defendants' actions alleged herein were intentional, fraudulent and/or malicious.

93.     Class Plaintiffs and the members of the putative Classes were damaged financially by the unfair Settlement which resulted from Defendants aiding and abetting.

94.     If the Settlement in the State Court Action bars the Related Action under *res judicata,* Class Plaintiffs and members of the putative Classes will lose a cause of action worth millions of dollars.

95.     Accordingly, Class Plaintiffs and the Class members are entitled to a judgment for their actual damages, as well as punitive damages.

96.     In addition and/or alternatively, because the Settlement of the State Court Action was procured by aiding and abetting, the Settlement Agreement should be declared null and void and should be set aside in its entirety.

## Count IV - Declaratory Judgment

97.     The allegations of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

98.     Under the circumstances alleged herein, pursuant to *Fed. R. Civ. P. 57*, the Court should declare the rights and liabilities of the parties and, specifically, declare the Settlement Agreement null and void, set it aside in its entirety, and order that Class Plaintiffs are not barred by *res judicata* and may proceed with their claims in the Related Action.

## Jury Demand

99.     Class Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all claims so triable.

## Prayer for Relief

**WHEREFORE,** Class Plaintiffs, on behalf of themselves and all others similarly situated, request judgment against Defendants as follows:

1.     Pursuant to *Fed. R. Civ. P. 23*, for an order certifying the proposed Classes herein and appointing Class Plaintiffs and their counsel to represent said respective Classes;

2.     That the Court decree that Defendants are financially responsible for providing all required notices to members of each Class;

3.     That the Court decree that the Board Member Defendants violated their respective fiduciary duties under Tennessee law, including without limitation *T.C.A. §48-58-301*, to Class Plaintiffs and the Classes in negotiating and approving the Settlement of the State Court Action;

4.     That the Court decree that the Defendants engaged in a civil conspiracy for the Board Member Defendants to breach the fiduciary duty owed to Class Plaintiffs and the Classes;

5.      That the Court decree that the Defendants aided and abetted each other in their common scheme for the Board Member Defendants to breach the fiduciary duty owed to Class Plaintiffs and the Classes;

6.      That the Court decree that the Defendants actions were intentional, fraudulent and/or malicious, wanton and/or grossly negligent;

7.      That the Court declare the rights and liabilities of the parties to the Settlement Agreement, attached hereto as ***Exhibit 1***, and specifically that the Court declare the Settlement Agreement null and void and order it set aside in its entirety;

8.      That the Court award compensatory/restitution damages to Class Plaintiffs and members of each Class;

9.      That the Court award punitive damages to Class Plaintiffs and members of each Class;

10.     That the Court award Class Plaintiffs and members of each Class their attorney's fees and costs;

11.     That the Court award Class Plaintiffs and members of each Class pre-judgment and post-judgment interest as prescribed by law;

12.     That the Court decree that Defendants are jointly and severally liable to Class Plaintiffs and members of each Class for all monetary relief obtained; and

13.     For such other and further relief as this Court may deem just and proper.

Respectfully submitted, this the 27th day of June, 2014.

/s/ Christopher T. Cain
Thomas S. Scott, Jr., BPR# 1086
Christopher T. Cain, BPR# 19997
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
(865) 525-2150
(865) 525-2120 (fax)
scott@scottandcain.com
cain@scottandcain.com


/s/ W. Allen McDonald
W. Allen McDonald
LACY, PRICE & WAGNER, P.C
249 North Peters Road, Suite 101
Knoxville, TN 37923
(865) 246-0800
(865) 690-8199 (fax)
amcdonald@lpwpc.com

***Attorneys for Class Plaintiffs***